UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA**

v.  No. 4:22-cr-0214-P

**ADRIAN DANTRELL WESLEY.**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Adrian Dantrell Wesley's Motion to Suppress ("Motion"). ECF No. 19. For the reasons stated below, the Court **DENIES** the Motion.

## BACKGROUND

In June 2022, the Fort Worth Police Department ("FWPD") received a tip regarding narcotics sales around Griggs Avenue. ECF 19-1 at 11. FWPD Officer Darty investigated the area and obtained a search warrant for a residence at 3005 Griggs Avenue ("Griggs Residence"). *Id.* While executing the warrant, the FWPD found large quantities of narcotics and money. *Id.* at 11–12. During the search of the residence, officers also found registration paperwork for a blue Nissan Altima ("Vehicle"). *Id.* at 12. Darty further recalled that Defendant was a bystander near the scene and that he told Darty that he was friends with owner of the Griggs residence. *Id.* at 11.

After the search, the FWPD surveilled the Griggs Residence and noted a high volume of short-term traffic at the house. *Id.* at 12. In his report, Officer Harris states that based on his knowledge, training, and experience, this kind of traffic reflects narcotics-related activity. *Id.* Harris also noted seeing Defendant approach the house on multiple occasions for short periods of time. *Id.*

On July 26, 2022, officers saw Defendant arrive at the Griggs Residence in a blue Nissan Altima—the same vehicle identified by its

registration during the search. *Id.* at 10. Officers saw Defendant engage in quick a hand-to-hand transaction before departing in the Altima. *Id.*

After leaving the residence, FWPD conducted a routine traffic stop in a residential neighborhood. *Id.* During the stop, the officers were informed that the Vehicle belonged to Defendant's girlfriend and Defendant contacted her multiple times during the stop. *See* ECF Nos. 19-2 at 14:32–40; 19-3 at 14:26–39. Defendant offered to have his girlfriend rush to the scene to deliver his identification and the vehicle's insurance information. ECF No. 19-2 at 14:26-43. He even told the officers "she finna get it done, she about to pull up." *Id.* Before the girlfriend arrived, the officers arrested Defendant pursuant to an outstanding warrant for possession of marijuana. *Id.*

Mere minutes after the arrest, Officer Darty searched the trunk of the Altima and found drugs. ECF No. 19-1 at 11; 19-2 at 14:50:00–15:00:00. Defendant's girlfriend arrived at the scene ten minutes after Defendant's arrest. ECF No. 19-3 at 15:00–03. Darty prevented her from accessing the vehicle because officers and narcotics agents were already at the scene conducting an extensive search. ECF No. 19-3 at 15:02:05–48.

Defendant now moves to suppress the evidence found in the vehicle, arguing that the warrantless search violated the Fourth Amendment.

## LEGAL STANDARD

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. CONST. amend. IV. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357 (1967). If a warrantless search occurred, "the burden shifts to the government to justify the warrantless arrest or search." *United States v. de la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977). The Government must prove the constitutionality of the search by a preponderance of the evidence. *See United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

2

## MOTION TO SUPPRESS

Defendant seeks to suppress all evidence seized from the vehicle's search. Because the Government conducted a warrantless search, the Government bears the burden of proving that the search was lawful. *Coolidge v. NH*, 403 U.S. 443, 455 (1971). The Government asserts that the search falls under five exceptions to the Fourth Amendment's warrant requirement: (1) inevitable discovery; (2) community caretaker; (3) inventory search; (4) search incident to lawful arrest; and (5) probable cause. *See* ECF No. 19. The Court addresses each in turn.

### A. Inevitable Discovery

For the inevitable discovery exception to apply, the Government must prove by a preponderance of the evidence that "(1) there is a reasonable probability that the contested evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the [G]overnment was actively pursuing a substantial alternate line of investigation at the time of the constitutional violation." *United States v. Lamas*, 930 F.2d 1099, 1102 (5th Cir. 1991).

The Government produced no evidence on the active pursuit of an alternative line of investigation. Further, the Government did not adequately brief the issue—it merely concluded the exception applied in its introduction and conclusion paragraphs. *See* ECF No. 21 at 1, 12; *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("In our adversarial system of adjudication, we follow the principle of party presentation.").

Without more, the Government has not met its burden of proof and the inevitable discovery exception to the Fourth Amendment's warrant requirement does not apply.

### B. Community Caretaker Exception and Inventory Search

Inventory searches are conducted pursuant to community caretaking responsibilities. *See United States v. McKinnon*, 681 F.3d 203, 208–10 (5th Cir. 2012). The Court thus combines the analysis.

The "community caretaking" exception to the warrant requirement applies to vehicle impoundments in three circumstances: (1) to reduce

3

police department liability for lost or stolen items; (2) leaving a vehicle locked and parked presented a risk of theft or vandalism; and (3) the vehicle could not be driven away from the scene. *Id.* at 208.

When a vehicle is lawfully impounded, officers may conduct an inventory search of the car to protect the owner's property and protect police from potential hazards and liability over lost or stolen property. *South Dakota v. Opperman*, 428 U.S. 364, 366 (1976). Inventory searches may not exceed their limited purposes thus, Courts require that departments put standard policies in place for these searches. *Colorado v. Bertine*, 479 U.S. 367, 369 (1987). Officers must follow their department's policy for impounding and inventorying—a failure to do so renders the inventory invalid. *United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995). Though officers have discretion in how to follow department policies, where a policy is strict and unambiguous, officers are bound to follow it narrowly. *See Bertine*, 479 U.S. at 367 (holding that officers were not required to choose the least invasive option where the policy provided two options).

Here, the Government contends that the officers were engaged in community-caretaking when they impounded the vehicle and conducted an inventory search. To show this, the Government contends that leaving the vehicle locked and parked presented a risk of liability and theft because it was in a high-crime area, there was cash in the front cupholder, and the vehicle was brand new. ECF No. 21 at 9. FWPD's inventory search policy states that officers may conduct a standard inventory search when: (1) The driver is removed from the vehicle and placed under arrest; (2) there is reasonable connection between the arrest and the vehicle; and (3) no other alternatives are available other than impoundment to ensure the protection of the vehicle. ECF No. 19-4 at 171.

Clauses (2) and (3) of the FWPD policy are at issue.[1] As always, the Court starts with the text. *See Shannon v. United States*, 512 U.S. 573,

---

[1] Body cam footage shows Defendant being removed from the vehicle and arrested. See ECF No 19-2. Whether Defendant was removed from the vehicle and placed under arrest is therefore not disputed by either party.

580 (1994) (Thomas, J.) ("[W]e turn first, as always, to the text[.]"). If the officers' conduct does not follow the requirements of the policy, the inventory search is invalid. *Como*, 53 F.3d at 92.

1. <u>Whether there is a reasonable connection between the arrest and the vehicle</u>

Defendant contends that "a reasonable connection between the arrest and the vehicle" requires that the vehicle be linked to the commission of the arrestable offense. ECF No. 19 at 9. The Court disagrees. "Words are to be understood in their ordinary, everyday meanings—unless the context indicates that they bear a technical sense." Antonin Scalia & Bryan A. Garner, *Reading Law* 69 (2012). Because the drafters of the FWPD policy use the noun "arrest" with no other context, its plain meaning applies. *Cf. Evans v. Jordan*, 8 F. Cas. 872, 873 (C.C. Va. 1813) (Marshall, J.), *aff'd*, 13 U.S. (9 Cranch) 199 (1815) ("[In the legislative branch] is confided, without revision, the power of deciding on the justice as well as wisdom of measures relative to subjects on which they have the constitutional power to act. Wherever, then, their language admits of no doubt, their plain and obvious intent must prevail."). The noun "arrest" is defined as:

> **1.** A *seizure or forcible restraint*, esp. by legal authority.
>
> **2.** The *taking or keeping of a person* in custody by legal authority, esp. in response to a criminal charge; specif., the *apprehension* of someone for the purpose of securing the administration of the law, esp. of bringing that person before a court.

*Arrest*, Black's Law Dictionary (11th ed. 2019) (emphasis added).

The ordinary meaning of the word "arrest" refutes Defendant's interpretation as the definition focuses on the physical nature of the act —not the reason leading to it. The ordinary meaning of the text broadly provides that there must be a reasonable connection between the vehicle and the physical seizure, restraint, taking, or keeping of the Defendant. *See, e.g.*, *United States v. Lozano*, No. CR B-09-825, 2009 WL 10678894, at *5 (S.D. Tex. Nov. 2, 2009), *aff'd*, 435 F. App'x 399 (5th Cir. 2011) ("While the vehicle had not been used in the literal commission of the

offense of public intoxication, it had a substantial connection to the arrest.").

Defendant was pulled over in the vehicle, questioned in the vehicle, physically removed from the vehicle, and arrested shortly thereafter. *See* ECF No. 19-2. Accordingly, there is clearly a "reasonable connection between the arrest and the vehicle."

2. <u>Whether no other alternatives are available other than impoundment to ensure protection of the vehicle</u>

The Court now looks to the plain meaning of the third clause. While "reasonable connection to the arrest" is a broad and inclusive phrase, "no other alternatives are available" is not. The restrictive language requires officers to contemplate available alternatives before seizing and searching a car. The evidence shows that the officers disregarded this responsibility. Two minutes after arresting Defendant, Officer Darty searched the trunk of the vehicle. *See* ECF No. 19-3 at 14:49:49. In the body cam footage of this short period, neither officer contemplated nor discussed alternatives to impoundment.[2] *See* ECF Nos. 19-2, 19-3.

As evidence of "no other alternatives," the Government states: (1) Defendant was not the registered owner; (2) there were no alternative drivers available to drive the vehicle; (3) the vehicle was new and in good condition; and (4) there was cash in the cupholder of the front seat. ECF No. 21 at 10. The Government argues that these four facts presented "an invitation to theft or burglary" and that "the officers had no choice but to impound the vehicle." *Id.* The Court is unconvinced by these assertions.

*First*, the officers knew the vehicle belonged to Defendant's girlfriend, given that he mentioned her to the officers and was in contact with her during the stop. *See* ECF Nos. 19-2 at 14:32–40; 19-3 at 14:26–39. To be certain, a potentially stolen car or an unknown owner justifies an inventory search. *See McKinnon*, 681 F.3d at 208.  That said, the

---

[2]Officer Darty's camera cut out after the arrest and Officer Garcia's audio turned off. *See* ECF Nos. 19-2, 19-3. Before this, the officers do not mention or discuss alternatives. The evidence and report likewise do not testify to either officer considering available alternatives.

6

Government's argument that Defendant's non-owner status impacted the decision to inventory the vehicle—despite knowing its owner—is weak.

*Second*, Defendant offered to have his girlfriend rush to the scene to deliver his identification and the vehicle's insurance information. ECF No. 19-2 at 14:26-43. He told the officers "she finna get it done, she about to pull up." *Id.* The option of contacting her to retrieve the vehicle was available the whole time. Indeed, the girlfriend showed up 10 minutes after Defendant's arrest. ECF No. 19-3 at 15:00–03. Officer Darty prevented her from accessing her vehicle because officers and narcotics agents were already at the scene conducting an extensive search.[3] ECF No. 19-3 at 15:02:05–48. To diminish her presence in the area, the Government claims that the girlfriend did not have a valid license and was not able to legally drive. While this could be relevant, the search was already well underway before either officer found this out. ECF 19-3 at 15:03–10. At bottom, the evidence shows that officers made no effort to identify an alternative driver and actively ignored the best available option—the vehicle's legal owner.

*Third*, the traffic stop and subsequent arrest occurred at 2:00 p.m. in broad daylight, the vehicle was legally parked in a residential area, and Defendant fully cooperated during the arrest. *See generally* ECF Nos. 19-2, 19-3. The Government counters that the vehicle was in a "crime ridden . . . high crime area" and that leaving the new vehicle was an "invitation for theft." ECF No. 22 at 19:8–17. While this would be a valid reason for impounding a car, it does not excuse the duty to ensure "no other alternatives" exist—especially in a low-risk situation. *See Bertine*, 479 U.S. at 369–70.

*Fourth*, according to the narrative report, Officer Darty did not notice the cash in the cupholder until the inventory search was underway.[4]

---

[3] Officer Darty stated that if the girlfriend went near her car "they'll draw guns on [her]." ECF No. 19-2 at 15:

[4] "Officer Darty observed that there was money loose in the center console of [the vehicle] *as he began to inventory it*." ECF No. 19-1 at 11 (emphasis added).

Based on this, the rationale of visible cash in the vehicle had no bearing on the officers' decision to inventory the vehicle.

In sum, FWPD had the option to draft a broad inventory policy but chose to adopt a narrow one. The policy's language of "no other alternatives" gives officers a responsibility to—at the very least—evaluate alternatives to impoundment before executing an inventory search. Based on an objective view of the officers' actions, both officers neglected their responsibility to follow the policy.

The Government does not meet its burden of proving that the search was conducted under the community caretaker inventory exception.

### C. Search Incident to Lawful Arrest

A search of a vehicle incident to lawful arrest is valid if the arrestee is unsecured and within reaching distance of the car's compartments at the time of the search or if the police have a reasonable belief that evidence of the crime of arrest is in the vehicle. *Arizona v. Gant,* 556 U.S. 332, 350 (2009). This exception serves three justifications: (1) to protect officers; (2) to prevent the destruction of evidence; and (3) to help officers gather evidence related to the crime of the arrest. *Id*. The Court must analyze "whether application of the search incident to arrest doctrine to this category . . . would untether the rule from the justifications underlying the . . . exception." *Riley v. California*, 573 U.S. 373, 386, (2014) (citing *Gant,* 556 U.S. at 342) (quotations omitted). A search incident to lawful arrest under all three justifications generally excludes the trunk of a vehicle and is limited to the "passenger compartment." *See Gant,* 556 U.S. at 332, 343–44; *Smith v. Kenny*, 678 F. Supp. 2d 1124, 1181 (D.N.M. 2009) (holding that the third justification does not allow officers to search a trunk.).

In *Gant*, police searched a car after they removed the driver from his vehicle and arrested him for a traffic violation. *Gant,* 556 U.S. at 350. The Supreme Court ruled this search invalid because none of the justifications for the search were met as (1) he was secured and not a threat to officers; (2) he was secured and not a threat to evidence; and (3) he was arrested for a traffic violation. *Id*.

8

Unlike the driver in *Gant*, who was arrested for a traffic violation, Defendant was arrested based on an outstanding warrant for possession of marijuana. Thus, even though defendant was removed from the vehicle before the search, the officers likely had an objectively reasonable belief that the evidence of drugs might be found in the vehicle. But despite their ability to search the vehicle pursuant to the lawful arrest, the officers exceeded their scope by searching the trunk of the vehicle—an off-limits area under the exception. ECF No. 19-1 at 11; 19-2 at 14:50:00–15:00:00. Thus, all evidence found in the trunk by the officers is not subject to the search incident to lawful arrest exception.[5]

Therefore, the Government does not meet its burden of proving that the search was conducted under a valid search incident to lawful arrest.

### D. Probable Cause – Automobile Exception

If officers have probable cause to believe that a vehicle contains contraband, the automobile exception allows them to search the car and all containers inside it—including the trunk. *Carroll v. United States*, 267 U.S. 132, 156 (1925). Probable cause exists where "facts and circumstances before the officer are such as to warrant a man of prudence and caution in believing that the offense has been committed, it is sufficient." *Id.* at 61. The relevant circumstances leading to the search are "viewed from the standpoint of an objectively reasonable police officer." *United States v. Freeman*, 914 F.3d 337, 342 (5th Cir. 2019) (citing *Ornelas v. US,* 517 U.S. 690, 699 (1996) (quotations omitted). So "[t]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *United States v. Robinson*, 436 U.S., at 136, 138 (1973).

Hand-to-hand transactions viewed by an experienced officer are often considered in the analysis of probable cause. *Pennsylvania v.*

---

[5]Officer Miller also found a stolen handgun in the glove compartment. ECF No 19-1 at 11. Though the Government is not pursuing charges related to this evidence, the gun's presence in the passenger compartment makes it admissible under the search incident to lawful arrest exception.

9

*Dunlap*, 555 U.S. 964, 964 (2008) (Roberts, J., dissenting) ("All these cases have unique factual wrinkles . . . but the core fact pattern is the same: experienced police officers observing hand-to-hand exchanges . . . in high-crime neighborhoods."). Where a hand-to-hand transaction is the only evidence offered, it is generally not enough to justify probable cause. *United States v. Guzman*, No. SA-13-CR-00089-DAE, 2013 WL 4097433, at *6 (W.D. Tex. Aug. 13, 2013), *aff'd* (Feb. 3, 2015). But if other factors suggestive of criminal activity or contraband are present, a hand-to-hand transaction in a suspicious context reinforces probable cause. *Id.*

Though none of the law enforcement officers involved with the case asserted probable cause at the beginning of the search,[6] the Court looks through the eyes of an objectively reasonable officer with the same set of facts before him. *See Whren v. United States*, 517 U.S. 806, 813, (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

An objective and prudent officer could reasonably believe that Defendant's vehicle contained contraband. The vehicle was connected to the following: (1) a search of a drug house—pursuant to a tip—where large quantities of drugs were found; (2) a person who frequented the drug house; (3) a hand-to-hand transaction outside of the drug house; and (4) a driver who had an active warrant for possession of drugs.[7] All of these circumstances point to a connection between the car and narcotics. Thus, these circumstances—viewed objectively through the eyes of a reasonable officer—support a finding of probable cause. *See Guzman*, 2013 WL 4097433, at *6 (finding probable cause where there was an anonymous tip, a hand-to-hand transaction, a connection with a vehicle to drug transactions, and suspicious conduct by the defendant).

---

[6] Officer Harris' report states that the probable cause search began after Officer Darty found drugs in the trunk of the car. ECF No. 19-1 at 12.

[7] The Government also contends that on July 26, 2022, another vehicle was searched after leaving the Griggs Residence and the driver admitted to obtaining drugs from the location. ECF No. 21 at 11. Though this is relevant to the Court's probable cause analysis, the Government produced no evidence in support of this assertion. As a result, the Court cannot consider it.

Thus, the automobile exception applies, and the Government has met its burden of proving a valid exception to the warrant requirement.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Supress. ECF No. 19.

**SO ORDERED** on this **3rd day** of **November 2022.**

_____

MARK T. PITTMAN
UNITED STATES DISTRICT JUDGE